May it please the Court. Good morning. My name is Cherry Wilson. I'm here on behalf of Mary Bell Zuniga. I'd like to reserve three minutes for rebuttal. The Ninth Circuit has consistently held in employment discrimination cases that it should not take too much, in fact some cases say very little evidence to survive summary judgment. And that's because the ultimate question cannot be resolved until there's been a searching inquiry into the full record by a fact finder. The Ninth Circuit has also held that motivations for adverse employment actions are not easily discernible. And without the searching inquiry into the full record, acts of bad or discriminatory motives can be masked by a complex web of post hoc rationalizations. That is the situation that Mary Bell Zuniga is in in this case. The defendants have tried to mask their discriminatory intent motive by manufacturing cause for her termination that had not been applied to male managers or they did not make the standard apply to the male managers for the same conduct. Well, hold on. It's my understanding that the complaints lodged against Zuniga where she mistreated Felipe Herrera, that was on a daily basis. Now with regards to the complaints about Mr. Harwick, that involved really isolated instances. So I think aren't those different? They were not isolated or isolated instance with Ms. Ruiz who you're talking about? I believe so. She said it was a consistent, happened at least three or four different occasions. And, you know, the severity of those allegations where she said he used profanity, he called her names, he called her names using profanity, slammed doors, kicked trash cans. She described his behavior as vile. It offended her and she felt her dignity was to the bottom. And we have the testimony from Sergio Garcia who testified by affidavit that said he saw the conduct. He saw the profanity, he saw the slamming of the doors, and he felt that she was physically in danger. So those are very severe allegations against Harwick. When Mr. Herrera first complained, he did say that Ms. Zuniga used belittling to him, but that's all he complained about when he first went to talk to Human Resources. So, you know, I think they're trying to manufacture this difference when this conduct against Harwick was very severe. And it's also coupled because there was a second complaint against Harwick, and because nothing's documented, the second plant manager didn't know there had been a prior complaint against Harwick, so they're allowing him to continue his behavior. And it's also coupled by the fact that plant manager Curtis Priest knew he used profanity towards the subordinate employees. So it wasn't just a one-time occasion. He knew he was doing that over and over again. So we've kind of got there, but I would like to talk about the investigation. We know Ms. Zuniga was the only female manager out of nine or ten. We brought to you five incidents where employees have complained about a male manager's activities, and not once were any of those complaints investigated. And that's part of the problem. When I deposed both plant managers, I would ask them about a complaint against one of the male managers. Oh, you know, I don't really remember the substance of that complaint. You know, I didn't write anything down, so there's no documentation. Well, what did you do? Oh, I went and talked to the plant manager, the male manager, and he told me what happened, but I didn't write any of that stuff down. Well, did you talk to any of the subordinate employees? No, I didn't talk to any of the subordinate employees. There's no witness memos. Did you discipline any of the male managers? No, so there's no record of discipline. So there's no documentation at all. So that taints the whole ability to someone to unmask their discriminatory motives. But I guess I just, when I look at the conduct that she's alleged to have committed, calling the employees inept, stating that the employees could not work as efficiently as she could, stating that she had been investigated for lawsuits in the past and nothing had happened, that she threatened to take hours away, even, I think, if I remember correctly, turning off the heat or the air conditioning, I think it was. I mean, these were pretty severe actions that the company understood and took action. But that's the difference. Those allegations did not come to light until they took an investigation of Ms. Duniga, and they went and interviewed her subordinate employees, which they didn't do in any of the other cases. And I think the air conditioning is really unfair because, you know, she turned it off when she was on the phone because it was loud. But she also testified that more than half of the buildings didn't have air conditioning. So to make a leap that that was a dangerous situation for the employees, there is no proof of that. There is no evidence of that. There's no testimony that says any of the employees were in danger when the air conditioner was off. So I think that was an unfair finding of fact by the district court, which did not exist. There was no evidence of. But, again, that was only a result of the subsequent investigation. That was not a complaint that Mr. Herrera made when he first went. Why does that matter? Why can't they consider all the information in making the termination decision? Well, I think that would be fine if they did that to the mail managers as well. If they documented everything, if they went and talked to their subordinate employees. Mr. Harvick has 15 to 18 subordinate employees, and they did not talk to one of them. And we've given you the affidavit of Sergio Garcia who said, if they would have came and talked to me, I would have said, yes, I saw it. I saw him do it. I've seen him do it to other employees all the time. That's what they say. I've given you four affidavits from employees who say it's common that the managers would use profanity and actions towards their subordinate employees. But there's never once been an investigation into a mail manager. That's what the difference is in this case. It all kind of builds from that. And also what they did was they didn't only talk to her subordinate employees. They went and talked to employees who she had to terminate. What are those employees going to say? They're not going to say anything nice about her. But that would be true if any manager had to terminate an employee. So if they wanted to conduct those investigations, they would have enough to terminate a mail manager. But she got reported the same exact comments that Harvick and the other mail managers and no investigation was done. But we've also got other issues about the investigation which casts doubt on them. For instance, the human resource director from the parent company writes a memo of a conversation that she had with Felipe Herrera where you're getting some of this information. Felipe Herrera says he never talked to her. He never had a meeting with her. So how can there be a memo of their conversation where he outlines these supposed terrible things that Maribel Zuniga did? They said that when they first complained, Ortiz said that Eric Villalobos was part of the group who complained. And he said, I don't know who made the complaint against her. I never talked to them. Yet she wrote a memo saying Villalobos said all these bad things about Zuniga. So, again, how can there be a memo if he never talked to her? These are all questions that need to be decided by a fact finder whether these allegations are even true because they're by information that is provably false. And they've also done it by telling you that there was a group of men who went to complain about Ms. Zuniga. And the fact is it was Herrera alone. He testified under oath. I went alone. And what's interesting is when I first deposed plant manager Callahan, he said, yes, I was told one person complained about her. But yet he submits an affidavit to the summary judgment where he says a number of people went and complained about Zuniga on the same day. That's not true. All these are credibility. And when there's these credibility issues to the employer, it's not appropriate for summary judgment. There should be a trier of facts should be able to make those decisions hearing the testimony, hearing the contradictions, hearing the falsity, and see if she was treated the same as the male managers. Some of the other things, you know, I cited to you case law where a court found that when you interview several individuals and don't interview the person who is accused of doing these things, that it's not a flawed investigation. It's unfair. And that is evidence of pretext. And what's your strongest case on that point? It's the Mastro case that was actually cited by the district court. I cite it on page 34 of my brief. But also, Curtis Priest, the plant manager, said he would never discipline a manager without telling them of the complaint and getting their side of the story. Yet he didn't tell Ms. Zuniga about the complaint or get her side of the story. She didn't know any of this investigation was going on until they called her and terminated her. And again, I've cited case law then that says if you deviate from your practices, that is evidence of pretext. And I think you can't also overlook that she was the only female manager out of nine or ten. And they fired her, and they had no longer had any women as managers, and then she was ultimately replaced with a male. So we've had – and again, I cited the case, the Hahn case, that says that's evidence of pretext. So I think when you take everything together, we have definitely met our burden of proof to avoid summary judgment and that she should have her chance at trial. Are you contending that you've met the burden for summary judgment only with respect to sex discrimination or with respect to another ground as well? Yes, sex discrimination. I'll reserve the rest of my time. All right. Thank you, Counsel. Thank you. All right. We'll hear now from Mr. Johnson. Good morning, Your Honors. May it please the Court, Eric Johnson, Counsel for Appellee Gowan-Millingco, LLC. Your Honors, this is not a case about an employee being terminated for profanity. As Justice Mendoza mentioned, there were much more egregious allegations made in this case, and that was a fact that the district court addressed in great detail in the district court's order granting summary judgment. It's really unusual to fire someone, particularly I think she was in the company for 17 years. You do an investigation and you don't talk to the person. You don't get their side. You don't hear them out before. That's very unusual. Why isn't that enough to say you deviated from your procedures in a way that raises a factual issue? I think, Your Honor, that is a great point, but it goes really to the specifics of this case. We've got five, six, maybe seven of the subordinates of Ms. Zuniga saying various things. One, she would yell at us. She would threaten to cut our hours over time. She cut off the air conditioning in Yuma, Arizona, in the middle of the summer. A number of other issues, and I can go into those. There's another employee, and I got affidavits that multiple people made complaints about him, and he got talked to. He got a different process than she got. Yes, and they don't identify any specific investigations where all these things were done. They have some general comments where they ask people, did someone take notes or would you talk to the complainant? And they may have answered yes or no, but we don't have any specifics about what those investigations involved. Notably, Ms. Ruiz, Margarita Ruiz, who made the complaint against Mr. Harvick, this is Ms. Zuniga's sister. During that time, I believe Ms. Zuniga might have been in charge of human resources. The individual who did the human resources investigation in regard to Ms. Zuniga was Esmeralda Ortiz. Esmeralda Ortiz was named the interim HR director once Ms. Zuniga was removed. So in terms of her having any set precedent in terms of how she handles investigations as an HR manager, she wasn't one. That was her first one. In regard to the Mastro case, which was mentioned, that was a D.C. Circuit case in which the court did note. It was odd that the target of the investigation was not interviewed. But you look at that case, and the whole issue in that particular case was a manager had been terminated, and the question was at what point did this—I won't go into all the details of that case— but at what point did this manager learn that one of the subordinates was in jail, and whether or not he did anything upon finding out that one of his subordinates was in jail. Obviously, yeah, it's important when the key issue is at what point did the manager know a specific fact. Of course, in that circumstances, it makes sense why you would interview that person. In this case, like I said, we've got five, six, seven individuals all saying consistent stories about what this individual did. What would it have mattered if they talked to Ms. Zuniga and she said, oh, that's completely untrue. That never happened. All seven of those peoples are completely lying, and there's even a couple of those things they allege that I can prove didn't happen. All right, well, that's not going to change the decision. Well, I don't—in this case, it's a little bit different. I didn't see that she's saying that they were lying about very much of it. It seems like—and even this morning, the argument is more of the differential treatment because it doesn't seem like they're really relying on the fact that this stuff wasn't true. It seems like for the—maybe not every detail, but they're pretty much acknowledging that most of it was true. So if they had talked to her, she would have presumably—yeah, this is true, but this is how we do business here, I guess, I assume, is what she would have—how she would have responded? I assume so, but what could she have pointed to? The Harvick situation? I mean, there's not going to be any other employees, and she doesn't allege that there are any employees that have engaged in a lot of the conduct that she did. She admitted, essentially, or at least said it was possible that she created a hostile work environment for the employees, at least in the last few months. Well, allegedly, Mr. Harvick was involved in multiple incidences involving profane language, kicking trash cans. I mean, just—and a different procedure was used for him. So, I mean, I think that's what he's pointing out. Right, absolutely, but I think we're missing a key fact here. Mr. Herrera made his complaint to Human Resources. Ms. Ruiz went to Curtis Priest, and I think another situation, someone went to Mr. Priest. Mr. Priest was not in Human Resources. What he did when he heard these complaints, he went and talked to the person. And in regard to the complaints that Ms. Ruiz had done, he went and talked to Mr. Harvick, said, whatever's going on, knock it off, and there were never any issues again. In this case, Mr. Herrera went to Human Resources. But we'll— Oh, sorry. I thought Ruiz said that there were multiple incidents over, like three incidents over a six-month period, so obviously didn't knock it off. No, she didn't complain until after the third incident. Oh, I see. So there's one complaint after the string of incidents. Yeah, and that was involving three incidents. And, yes, there was absolutely allegations of serious improper conduct. And was there a policy that wasn't then followed? I mean, I guess I want to make sure I understand their point. Was there a policy that you're supposed to, you know, conduct your investigation and then talk to the individual? I mean, what— No, Your Honor, there isn't. It's, you know, every investigation is different, and there's discretion in terms of how you do things. And like in this case, I think Ms. Ortiz determined what's the point with these allegations. And let's say everything is a lie, and these employees are all lying about her, which there's no reason to believe that any of them were. And Ms. Zuniga, in fact, admits to much of the conduct. At a minimum, she's got seven subordinates that can't stand working with her. They do not want her to be around, period. So what are you going to do? Let's say it's all—it was all lies, which it wasn't, but the employer's left with a situation where, hey, I've got subordinates that cannot stand to work with this person. And based on that information alone, I'm going to take action and say, no, I'm going to fire her. Whether that would have been fair or not, it doesn't matter. The only question is—I mean, she's an at-will employee. She can be fired for any reason, whether it's a good reason or not, other than, you know, maybe for the protected characteristics, obviously. But the employer's going to say, no, I'm not going to continue to have her over these subordinates when one is getting sick, can't sleep, is afraid to come to work, and these other situations. I mean, the only other thing is, I suppose, you know, Ms. Zuniga might argue, well, you should have switched me to someplace else then if I wasn't a subordinate, you know, where I didn't have, you know, subordinates reporting to me or not. Well, you know, could that have happened? I suppose. Why not just sit her down and say, here's everything I've heard about you. What do you have to say about it? It's very simple. It's kind of standard to do.  Right. But, I mean, like I said, I think under the circumstances of this case, Ms. Ortiz figured there's no point. She's going to deny it. In fact, she didn't deny a lot of it, though. And certainly if she admitted to that, the stuff like the hostile work environment, that's grounds for termination right there. You know, and the difference in these investigations, like I mentioned earlier, certain people went to Curtis Priest. They didn't go to Esmeralda Ortiz. If they went, let's say they went to Esmeralda Ortiz and she was the HR manager and it wasn't, you know, Ms. Zuniga or any of the predecessors, you know what? I bet there would have been a different investigation. If Ms. Ruiz went to Ms. Ortiz and she was the interim HR manager, I bet she probably would have talked to the other subordinates. So, yeah, the exact same type of investigation did not take place. But, again, that's irrelevant. The question is, you know, what was the reason for not doing the same type of investigation? Because they wanted to discriminate against Ms. Zuniga. And there is no direct evidence of discrimination. You know, it's all circumstantial. And in terms of, you know, the evidentiary burden, you know, when we're talking about similarly situated employees as part of a prima facie case, you know, first under McDonnell Douglas, you know, the plaintiff must assert a prima facie case of discrimination, which includes an argument or evidence establishing that similarly situated employees were treated more favorably and outside of the protected class of the plaintiff. At that point, the employer can articulate a legitimate non-discriminatory reason for the termination. And the Reeves, the Supreme Court case, makes clear that that's a burden of production, not persuasion. And as soon as the employer does that, the burden goes back to the employee or the plaintiff. And they must show, you know, I believe in the Stiegel case, which is cited, you know, by appellant in the briefs, it said there still needs to be an over-to-overcome pretext to challenge the employer's legitimate non-discriminatory reason and show that it was pretext for discrimination. The plaintiff still needs to show specific and substantial evidence that would indicate that the decision was pretext for discrimination. There's been no such evidence that's been produced in this case. I think one thing that's really telling when we're talking about similarly situated employees is to look at the cases, and especially the cases that are cited by appellants. You know, she relies upon Hahn v. Executive Jet Management, which is a Ninth Circuit decision out of 2010. Before addressing those facts, I actually want to talk about a case that was cited in the Hahn decision, and that is Morrow v. Walmart Stores, which is 152 F3D 559, Seventh Circuit, 1998. And in that case, the Seventh Circuit had a passage that I would like to just briefly read that I think is very instructive. It says, Walmart's quick decision to terminate the plaintiff may seem unfair in a work environment that appears rife with similar off-color conduct. Although some of Walmart's female employees seem to have engaged in questionable behavior, there is no evidence that any of the behaviors sparked complaints of harassment, like those that Walmart received concerning plaintiffs. Without evidence of similar employee complaints, Walmart cannot be faulted for failing to respond to those incidents in the same way that it responded to plaintiff's situation. Here again, even though the claims that Mr. Ruiz made were serious, there were still about three incidents versus the ones against the allegations against Ms. Zuniga, which were basically on a daily basis over an extended period of time. Those are different situations. Likewise, even in the Hahn case, that involved male plaintiffs who were airline pilots who were fired for alleged sex harassment, sex discrimination. They had apparently engaged in sexual banter with female employees, sent inappropriate emails, showed pornographic websites, various other things. They were fired after these allegations were made, and their response was, well, hey, the female employees, this was not unwelcome. They were sending emails. They were talking back in the sexual banter. They did the same thing as essentially us. Well, the court determined in that case it wasn't the same thing because those female employees claimed that they were sexually harassed. In fact, one male pilot even improperly touched a female colleague without her consent. At no point did the male plaintiffs ever say that they were sexually harassed by the female employees, and the Ninth Circuit in that decision said, yeah, those are different situations. They're not similarly situated. And I think that goes hand-in-hand with the Walmart case where, yeah, just because some of the victims or people who complained engaged in improper conduct, that doesn't mean they're all of a sudden all similarly situated employees. And in this case, just because other supervisors used bad language, that doesn't mean that, oh, okay, well, I can't be fired now for bad language. And any claim that I did it more than others, you can't make that argument. Well, you can, but aside from that, this isn't about bad language. This is about a bunch of other things. And this is also consistent with the cases that are cited by Appelli in their briefs, or excuse me, in its brief. You know, I cite Benton v. ARA Food Services. In that case, the court determined that plaintiff's coworkers were not similarly situated when none of the coworkers had alleged or engaged in conduct as egregious as plaintiff. Likewise, in Cruz v. City of Ithaca, there was general allegations about another employee using derogatory and profane terms, and that was insufficient to compare with a plaintiff who had much more consistently used profanity, raised his voice, and ignored directions from his supervisors. And also, the fact that other employees had not been investigated or disciplined for, you know, profane language was immaterial in that case. Your Honor, I believe my time is just about up. Thank you. Unless you have further questions. All right. Thank you, counsel. We'll hear rebuttal then from Mr. Wesson. It's pretty convenient that all the complaints against the mail managers were not investigated, but Ms. Zuniga's was. I mean, I think that shows. Counsel said that there wasn't a policy, there was no written policy or procedure about how they were going to conduct this process. Well, Curtis Priest testified under oath that he would never discipline a manager without telling them the complaint and allowing them to address the complaint themselves. So whether the case law says whether it's a formal or informal policy or practice, deviation from that is evidence of pretext. What do you make about their argument that it was the person that they contacted was the issue, that they went to an HR person with regards to Ms. Zuniga versus this other individual? Ortiz went to Curtis Priest, and he then told her to handle it. So he knew about the complaint right off. He could have handled it just like he did with the mail managers, where he went to them, talked to them about it, asked for her side of the story, and resolved it. But also I'd like to point out when he says, oh, they just resolved it with Harvick and there was no other issue, that's totally incorrect. He had a second complaint months later after Callahan became the plant manager. And since there was no documentation, Callahan had no opportunity to find out whether there had been prior complaints against Harvick. So they weren't stopping it. They were still allowing it to happen. So this was definitely different conduct towards the mail managers than Ms. Zuniga. Also, she does admit she used profanity. And we have given you a long section, cited many witnesses. Even Curtis Priest says profanity was the right amount at Gowan. So she admits she uses profanity. She's not admitting that she was doing terrible things to them, like making them suffer from heat exhaustion or anything like that. She's admitting that she used some profanity towards them, no different than she received moving up the ladder, no different than the other managers do. And I've got four other affidavits that all say managers use profanity to their subordinate employees. And also what's interesting, he says that there are seven subordinate employees who don't want to work under her. Well, what's interesting about that is one of them is named Jose Esparza. And Ortiz apparently interviewed him, but there's no memo, even though it's their policy to write a memo after someone's interview. So, again, I think a fair assessment would be that he had positive things to say about Ms. Zuniga, and that's why there is no memo. It's just part of their manufacturing the case against her. But, again, that's more credibility that a trier of fact needs to look at what happened during this investigation. Also, she was a supervisor for over 15 years. Counsel, your time is up. She had no other complaints from a subordinate employee until that date. Okay. Thank you. All right. Thank you, Counsel. The case just argued will be submitted.
judges: COLLINS, VANDYKE, MENDOZA